IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

MICHAEL POWELL, &
FRED WURTZEL,
individually and on behalf of those           Case No. 20-11023
similarly situated,

        Plaintiffs,

  v.

JOCELYN BENSON,
MICHIGAN SECRETARY OF STATE,
in her official capacity, &

JONATHAN BRATER,
MICHIGAN DIRECTOR OF ELECTIONS,
in his official capacity,

        Defendants.

_____/

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs, Michael Powell and Fred Wurtzel (Plaintiffs) hereby sue Jocelyn Benson (Ms. Benson), in her official capacity as Michigan Secretary of State, and Jonathan Brater (Mr. Brater), in his official capacity as Michigan Director of Elections, and state as follows:

### INTRODUCTION

1. Plaintiffs bring this lawsuit against Defendants, in their official capacities, to vindicate their rights as individuals with disabilities who have been denied the opportunity to vote privately and independently by absentee ballot, in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101- 12213, and Article III of the Michigan Persons with Disabilities Civil Rights Act, MCL § 37.1101, *et seq.* (PDCRA). On the basis of these violations, Plaintiffs seek a declaratory judgment, preliminary and permanent injunctive relief,

attorney's fees and costs, and any other available relief.

2. Plaintiffs are blind individuals who are registered to vote in Michigan, and desire to exercise their right to vote by absentee ballot in an accessible and independent manner; a right universally afforded to Michiganders without disabilities.

3. Although there is readily available technology that would provide Plaintiffs, and other voters who are blind or who have other disabilities that prevent them from reading or writing print (print disabilities), the opportunity to cast their votes through absentee ballots privately, independently, and effectively, as able-bodied individuals may do, Defendants have refused to make this technology available to Plaintiffs.

4. Defendants' conduct has long been in violation of the ADA and the PDCRA, but the need for immediate implementation of accessible absentee ballots for Plaintiffs and those similarly situated has never been more urgent in light of the global pandemic, which is expected to result in most, if not all, voters in Michigan voting by absentee ballot in upcoming elections.

5. Because individuals without disabilities may cast their votes by absentee ballot privately, independently, and effectively, the ADA and PDCRA require Defendants to provide individuals with disabilities an equal opportunity to do the same.

6. By ignoring the needs and dignity of Plaintiffs and those similarly situated, Defendants have treated them as second-class citizens, unfairly and unjustly ignored their basic rights to security, equality, and dignity, and have unreasonably restricted their fundamental and sacred right to vote. Accordingly, Plaintiffs seeks declaratory relief stating that Defendants' conduct violates the ADA and the PDCRA, as well as injunctive relief requiring Defendants to immediately introduce accessible absentee ballots that can be completed independently and privately, just as numerous states across the country have already done.

## JURISDICTION

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 because Plaintiffs' claims arise under the ADA. In addition, the Court has jurisdiction over Plaintiff's claims for declaratory relief pursuant to 28 U.S.C. §§ 2201-02 and jurisdiction over Plaintiff's claims for injunctive relief pursuant to 15 U.S.C. § 1116.

8. This Court has supplemental jurisdiction over Plaintiffs' state law claim pursuant to 28 U.S.C. § 1367, as the claim arises from the same set of operative facts as Plaintiffs' federal claim.

9. Venue is proper in the Eastern District of Michigan, Southern Division under 28 U.S.C. § 1391 because Plaintiff, Michael Powell is situated within this District, and because the events, acts, and omissions giving rise to Plaintiffs' cause of action occurred in this District.

## PARTIES

10. Plaintiff Michael Powell is a blind individual who is registered to vote in Michigan. Mr. Powell is the current President of the Michigan Affiliate of the National Federation of the Blind.

   a. Mr. Powell resides in Warren, MI, and is a regular voter who intends to vote in the upcoming primary and general elections.

   b. Mr. Powell would like the option of voting absentee privately and independently from his home, as allowed by Michigan law, in the upcoming primary and general elections.

11. Plaintiff Fred Wurtzel is a blind individual who is registered to vote in Michigan. Mr. Wurtzel is the former President of the Michigan Affiliate of the National Federation of the Blind, and he is the current President of the Capital Region Chapter of the Michigan Affiliate of the National Federation of the Blind. Mr. Wurtzel also currently serves on the board for the

Michigan Affiliate of the National Federation of the Blind.

    a. Mr. Wurtzel resides in Lansing Township, MI and is a regular voter. Mr. Wurtzel intends to vote in upcoming primary and general elections.

    b. Mr. Wurtzel would like the option of voting absentee privately and independently from his home, as allowed by Michigan law, in the upcoming p[1] elections.

    c. In addition, Mr. Wurtzel has communicated his concerns that the current absentee ballot system does not allow for individuals who are blind to vote independently and privately, including attending meetings with Defendants' staff where he has raised these concerns.

12. Ms. Benson is Michigan's Secretary of State. In that capacity, Ms. Benson is responsible for oversight of statewide elections. She oversees Michigan's absentee voting program and maintains and operates the Secretary of State's voter information website.[2] As Michigan's chief elections official, Ms. Benson is responsible for ensuring compliance with the requirements of applicable state and federal law, including the ADA. Plaintiffs bring this action against Ms. Benson in her official capacity as Secretary of State.

13. Mr. Brater is the Director of the Michigan Bureau of Elections. In that role, Mr. Brater oversees the administration of elections statewide. Plaintiffs bring this action against Mr. Brater in his official capacity as Michigan Director of Elections.

## FACTUAL ALLEGATIONS

**Absentee Voting in Michigan**

14. In 2018, Michigan voters enshrined the right to vote by absentee ballot without

---

[1] https://www.michigan.gov/sos/0,4670,7-127-1640_9150-513201--m_2017_1,00.html
[2] https://mvic.sos.state.mi.us/RegisterVoter

4

providing a reason or excuse into the state's constitution by successful ballot measure. As a result, the right of all Michiganders to vote by absentee ballot is a right guaranteed by the state constitution.

15. Michigan does not require absentee voters to provide a reason for their decision to vote absentee instead of in-person.

16. Michigan voters request absentee ballots through a form that must be filled out and mailed in, faxed, electronically-mailed, or personally delivered to their city or township clerk.

17. Once a voter's absentee ballot request is processed, Michigan mails a paper absentee ballot to the requesting voter. The only option for Michigan voters, including Plaintiffs, is a paper absentee ballot.

18. Paper absentee ballots are not accessible to Plaintiffs or to other individuals who are blind or have disabilities that limit their ability to access print materials. Blind individuals cannot read the printed text that appears on the absentee ballot. Thus, to vote absentee, Plaintiffs and other blind and print-disabled Michigan voters must rely on the assistance of another person to read and mark their paper absentee ballots for them. Such assistance strips Plaintiffs of the secrecy of their ballots.

19. The paper absentee ballot also forces those who are blind to seek in-person assistance to complete their absentee ballot. Individuals who live alone would be forced to violate the Governor's Executive Order requiring Michigan citizens to stay home, and would be contrary to state and federal policy encouraging, and in many instances requiring, social distancing to stem the spread of the global pandemic.

20. When Plaintiffs rely on the assistance of another person to mark their paper absentee ballot, the assisting individual must also sign the absentee ballot when it is returned to the designated city of township clerk's office.

21. Plaintiffs want the same option for themselves and those similarly situated of voting absentee privately and independently in the May, August, and November 2020 elections that Defendants extend to all other voters.

22. Defendants have been apprised of this ongoing violation of the rights of individuals who are blind by Mr. Wurtzel, as well as other blind individuals, including members of the National Federation of the Blind, and they have refused to bring agency polices into compliance with state and federal law.

**Auxiliary Aids and Services for Absentee Voting**

23. Auxiliary aids and services exist that would afford Plaintiffs and other blind and print-disabled voters an equal opportunity to vote absentee privately and independently.

24. For example, Maryland has developed an online ballot marking tool that allows voters to view and mark their absentee ballots on their computers. Maryland created the tool so that it would work with screen access software and has extensively tested the tool's usability for individuals with a variety of disabilities.

25. In the November 2014 election, more than 1,700 Maryland voters with disabilities used the tool to mark their voting selections on their computers, review a summary screen showing their selections, and print out their ballots with their selections marked.

26. Maryland's online ballot marking tool allows voters who are blind or have other print disabilities to mark their absentee ballots privately and independently. Although the absentee ballot must still be printed, signed, and returned to the voter's local board of election to be counted, because the signature page prints separately from the ballot, voters need not sacrifice the secrecy of their ballots to receive assistance with signing.

27. Because Maryland is willing to share its online ballot marking tool technology with other states at no charge, implementing the tool would impose only minimal costs for

Defendants.

28. Alternatively, the Prime III voting system also provides for accessible absentee voting. Prime III is an accessible electronic voting system that can be used for both in-person and absentee voting. For absentee voting, voters can access their absentee ballots through their web browser and read and mark their ballots on their computers. Voters then print their ballots and mail them back to their local boards of election where their votes are counted.

29. The Prime III has been used in state elections in Oregon, Wisconsin, and New Hampshire. It has also been used in national organization elections such as those of Self Advocates Becoming Empowered, National Society of Black Engineers, and National Council on Independent Living.

30. In September 2015, Prime III was released as open source technology, meaning that it can be used by Defendants, or by any other entity, free of charge.

31. Finally, other states, like Alaska, make available an electronic absentee ballot that can be completed and transmitted using the voter's computer. Such electronic absentee voting systems can be made accessible for blind voters who use screen access software.

32. Defendants have been asked on numerous occasions to implement accessible absentee ballot systems that would allow Plaintiffs to vote privately and independently, such as offering Maryland's online ballot marking tool as an example of one that is readily available, but Defendants have refused to provide blind Michigan voters with an auxiliary aid or service that would grant them an equal opportunity to vote absentee.

<strong>COUNT I</strong>

**Violations of Title II of the Americans with Disabilities Act 42 U.S.C. § 12131** *et seq.*

33. Plaintiffs incorporate the allegations in the preceding paragraphs.

34. The Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213, guarantees qualified individuals an equal opportunity to access the benefits of the services, programs, or

activities of a public entity. 42 U.S.C. § 12132.

35. Title II of the ADA mandates, *inter alia*, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

36. In providing aids, benefits, or services, public entities may not "[a]fford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others," nor may public entities provide qualified individuals with disabilities "an aid, benefit, or service that is not as effective in affording equal opportunity" to gain the same result or benefit as provided to others. 28 C.F.R. § 35.130(b)(1)(ii)-(iii).

37. Furthermore, such public entities "shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." 28 C.F.R. § 35.160(b)(1).

38. Critically, to be effective, the "auxiliary aids and services must be provided in . . . **such a way as to protect the privacy and independence of the individual with a disability.**" 28 C.F.R. § 35.160(b)(2) (emphasis added).

39. Defendants operate an agency of the State of Michigan, which is a public entity under Title II of the ADA.

40. Absentee voting is a service, program, or activity provided by Defendants.

41. Plaintiffs are individuals with disabilities under the ADA, as they are legally blind.

42. Plaintiffs, and others similarly situated, are registered to vote in Michigan and intend to vote in upcoming elections, and are thus qualified individuals entitled to the protections

8

of the ADA.

43. Defendants have failed to meet their obligations to provide voters who are blind or have print disabilities with an opportunity to vote that is equal to the opportunity provided to other voters. In failing to implement a readily available, accessible absentee voting system, Defendants have refused to provide an auxiliary aid or service and failed to make a reasonable modification necessary to allow Plaintiffs, and those similarly situated, to vote equally. Accordingly, Defendants have excluded and continue to exclude Plaintiffs and those similarly situated from participation in, and denied them the benefits of or otherwise discriminated against them in, its service, program, or activity of absentee voting.

44. As a result of Defendants' actions, Plaintiffs and those similarly situated have suffered and will continue to suffer irreparable harm: they have suffered and continue to suffer from discrimination and unequal access to Defendants' programs, services, or activities of absentee voting. If there is no change in the status quo, Plaintiffs and those similarly situated will be denied their right to vote absentee privately and independently in upcoming elections.

45. The need for implementation of an accessible absentee voting system is more pressing than ever. In light of COVID-19, it is reasonably expected that most if not all voters will be required, or will exercise the option, to vote absentee. Critically, many individuals with disabilities do not have assistance in their homes to complete the paper ballot, which will effectively prevent them from voting in upcoming elections all together.

46. In the absence of accessible absentee ballots, individuals who are blind will face the horrific choice of leaving their homes in order to receive in-person assistance voting at their local polling place, thereby facing the threat of severe illness or death, or staying home and foregoing voting all together. Defendants have placed many individuals similarly situated to Plaintiffs in the position of choosing between their health (and perhaps their lives) by voting in-

person, or foregoing their sacred right to vote all together—a false and illegal choice that violates federal law.

47. Defendants' failure to meet their obligations to provide blind voters with an equal opportunity to vote absentee is an ongoing and continuous violation of the ADA and its supporting regulations. Unless restrained from doing so, Defendants will continue to violate the ADA. Unless enjoined, Defendants' conduct will continue to inflict injuries for which Plaintiffs have no adequate remedy at law.

48. The requested alteration could be implemented with minimal cost given the openly available options for allowing independent, private absentee voting, and would not fundamentally alter Defendants' programs and services. See Hindel v. Husted, 875 F.3d 344, 348 (6th Cir. 2017).

49. Unless the requested relief is granted, Plaintiffs and those similarly situated will suffer irreparable harm in that they will be discriminated against and denied equal access to absentee voting, or forced to risk their health, and possibly their lives, to vote in-person – a program, service, or activity that impacts their ability to participate in one the most fundamental democratic institutions: voting.

50. The ADA authorizes injunctive relief as appropriate to remedy acts of discrimination against persons with disabilities. 42 U.S.C. § 12188(a)(1).

51. Plaintiffs and those similarly situated are entitled to injunctive relief, as well as reasonable attorney's fees and costs.

**COUNT II**

**Violation of Article III of the Michigan Persons with Disabilities Civil Rights Act
MCL § 37.2301** *et seq.*

52. Plaintiffs incorporate the allegations in the preceding paragraphs.

53. Article III of the Michigan Persons with Disabilities Civil Rights Act (PDCRA) prohibits any person from denying an individual the full and equal enjoyment of the services,

privileges, or advantages of a place of public services because of a disability that is unrelated to the individual's ability to utilize and benefit from those services, privileges, or advantages. *See* M.C.L. § 37.1302.

54. The term "public service" includes an agency managed by or on behalf of the State of Michigan. MCL § 37.1301(b).

55. The PDCRA prohibits state actors, such as Defendants, from denying an individual with a disability "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation or public service because of a disability that is unrelated to the individual's ability to utilize and benefit from the goods, services, facilities, privileges, advantages, or accommodations or because of the use by an individual of adaptive devices or aids." MCL § 37.1302(a).

56. Plaintiffs are individuals with disabilities as the term is defined in the PDCRA, as they are legally blind. MCL § 37.1301.

57. Defendants' refusal to implement accessible absentee ballots that can be completed independently and privately by Plaintiffs and those similarly situated is in direct violation of the PDCRA. In so doing, Defendants continue to deny Plaintiffs and those similarly situated the right to full and equal enjoyment of the right to vote—perhaps the most fundamental and critical right to a healthy and sustainable democracy.

58. Defendants have access to numerous auxiliary aides and tools designed to provide independent and private absentee voting to individuals who are blind or who have print disabilities, which can be implemented with minimal cost.

59. Defendants have long been on notice that their conduct violates state law, but they refuse to conform their policies to the very laws they swore to uphold as the stewards of Michigan's elections, dismissing the repeated concerns raised by Mr. Wurtzel and other members

11

of the National Federation of the Blind.

60. If Defendants do not conform their conduct to the requirements of state law, numerous individuals similarly situated to Plaintiffs will be totally excluded from the voting process due to an inability to physically access the polls and a lack of assistance at home to complete a paper ballot.

61. The injury suffered by Plaintiffs—effective exclusion from the ballot box, as well as the imminent threat to their health and lives—has no adequate remedy at law. The harm is immediate and ongoing and can only be cured through injunctive relief ordering Defendants to implement an accessible absentee ballot system in time for the upcoming primary and general elections.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor and award them the following relief:

1. A preliminary and permanent injunction prohibiting Defendants from violating the ADA and the PDCRA and requiring them to offer a private and independent method of absentee voting that is accessible for Plaintiffs and those similarly situated in time for use by voters in the May 5, 2020 primary elections and in all future elections;

2. A declaration that Defendants have and continue to violate the ADA and the PDCRA;

3. An award of Plaintiffs reasonable attorney's fees and costs; and

4. Such other and further relief as the Court may deem just and proper.

Respectfully submitted,

/s/ Jason M. Turkish
Jason M. Turkish (P76310)
Ryan T. Kaiser (P79491)
Melissa M. Nyman (CA Bar #293207)
NYMAN TURKISH PC
20750 Civic Center Drive, Ste. 290
Southfield, MI 48076
Phone: 248-284-2480
Fax: 248-262-5024
Jason.Turkish@NymanTurkish.com
Ryan.Kaiser@NymanTurkish.com
Melissa.Nyman@NymanTurkish.com

David Mittleman (P37490)
Grewal Law, PLLC
2290 Science Parkway
Okemos, MI 48864
Phone: 517-393-3000
Fax: 517-393-3003
dmittleman@4grewal.com

Date: April 25, 2020     *Counsel for Plaintiffs*