## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF MICHIGAN

MICHAEL POWELL, &
FRED WURTZEL,
individually and on behalf of those
similarly situated,

        Plaintiffs,

  v.

JOCELYN BENSON,
MICHIGAN SECRETARY OF STATE,
in her official capacity, &

JONATHAN BRATER,
MICHIGAN DIRECTOR OF ELECTIONS,
in his official capacity,

        Defendants.

_____/

Case No. 20-11023

Hon. Gershwin A. Drain
Magistrate Judge Michael J. Hluchaniuk

**Oral Argument Requested**

## PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

NOW COMES Plaintiffs, Michael Powell and Fred Wurtzel (Plaintiffs), by and through undersigned counsel, and hereby move this Honorable Court for a Preliminary Injunction pursuant to Federal Rule of Civil Procedure 65 and Local Rule 65.1 in order to prevent irreparable injury to Plaintiffs and those similarly situated. Defendant Jocelyn Benson, in her official capacity as Michigan Secretary of State, and Defendant Jonathan Brater, in his official capacity as the Director of the Michigan Bureau of Elections, have refused to provide blind Michigan voters with accessible absentee ballots that can be completed privately and independently in violation of Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12131, *et seq.* and Article III of

the Michigan Persons with Disabilities Civil Rights Act, MCL § 37.1301, *et seq*. In

support of this motion, Plaintiffs rely on the Complaint, the attached brief, and the

attached exhibits.

WHEREFORE, for all the reasons set forth in this Motion, the Complaint [ECF

#1], and the attached brief, Plaintiffs hereby request that this Honorable Court order

Defendants to immediately implement an absentee voting system that is accessible to

individuals who are blind, and which can be completed independently and privately in

order to bring their conduct into compliance with State and Federal Law.

<div style="margin-left: 40%;">

Respectfully submitted,

/s/ Jason M. Turkish
Jason M. Turkish (P76310)
Ryan T. Kaiser (P79491)
Melissa M. Nyman (CA Bar #293207)
NYMAN TURKISH PC
20750 Civic Center Drive, Ste. 290
Southfield, MI 48076
Phone: 248-284-2480
Fax: 248-262-5024
Jason.Turkish@NymanTurkish.com
Ryan.Kaiser@NymanTurkish.com
Melissa.Nyman@NymanTurkish.com

David Mittleman (P37490)
Grewal Law, PLLC
2290 Science Parkway
Okemos, MI 48864
Phone: 517-393-3000
Fax: 517-393-3003
dmittleman@4grewal.com

</div>

Dated: April 25, 2020                    *Counsel for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF MICHIGAN

MICHAEL POWELL, &
FRED WURTZEL,
individually and on behalf of those
similarly situated,

     Plaintiffs,

 v.

 JOCELYN BENSON,
 MICHIGAN SECRETARY OF STATE,
 in her official capacity, &

 JONATHAN BRATER,
 MICHIGAN DIRECTOR OF ELECTIONS,
 in his official capacity,

    Defendants.

———————————————————————/

Case No. 20-11023

Hon. Gershwin A. Drain
Magistrate Judge Michael J. Hluchaniuk

__Oral Argument Requested__

# __PLAINTIFFS' BRIEF IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION__

## **TABLE OF CONTENTS**

INDEX OF AUTHORITIES ..................................................................... iv

STATEMENT OF QUESTION PRESENTED ....................................... vi

MOST CONTROLLING AUTHORITY ............................................... vii

INTRODUCTION ...................................................................................... 1

STATEMENT OF FACTS ......................................................................... 3

    I.     Absentee Voting ........................................................................ 3

    II.    The Impact of COVID-19 .................................................... 4

    III.   Accessible Voting Systems ................................................. 5

    IV.    The Individual Plaintiffs and Their Plans for Voting ......... 6

LEGAL STANDARD ............................................................................... 7

ARGUMENT ............................................................................................ 8

    I.     PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS. .......... 8

    A. Standard of Review. ................................................................ 8

    B. Plaintiffs are qualified individuals with disabilities. ................ 9

    C. Defendants' failure to implement an accessible absentee voting
       method deprives Plaintiffs of their right to vote in a manner that is
       private and equal to the manner afforded to others under the ADA
       and violates well-settled law in this Circuit. ........................... 10

    D. Defendants' illegal conduct places Plaintiffs and those similarly
       situated at unnecessary risk of serious illness or death. ........... 13

E. The Sixth Circuit in *Hindel* ruled that that the implementation of an accessible absentee ballot system does not fundamentally alter the state's programs or services. .............................................................. 14

II. PLAINTIFFS WILL SUFFER IRREPERABLE HARM IN THE ABSENCE OF PRELIMINARY RELIEF. .................................... 17

III. THE BALANCE OF EQUITIES STRONGLY FAVORS PLAINTIFFS. ........................................................................................ 20

IV. AN INJUNCTION WILL SERVE THE PUBLIC INTEREST. .............. 21

V. PLAINTIFFS SHOULD NOT BE REQUIRED TO POST A BOND. ... 22

CONCLUSION .................................................................. 23

# INDEX OF AUTHORITIES

Page(s)

Cases

Am. Council of the Blind v. Paulson,
  525 F.3d 1256 (D.C. Cir. 2008) ............................................................. 12

Am. Sys. Consulting, Inc. v. Devier,
  514 F. Supp. 2d 1001 (S.D. Ohio 2007) ................................................ 23

California Council of the Blind v. Cnty. of Alameda,
  985 F. Supp. 2d 1229 (N.D. Cal. 2013) ........................................... 12, 13

CSX Transp., Inc. v. Tennessee State Bd. of Equalization,
  964 F.2d 548 (6th Cir. 1992) ................................................................ 17

Deck v. City of Toledo,
  29 F. Supp. 2d 431 (N.D. Ohio 1998) .................................................. 21

Dep't of Revenue,
  934 F.2d 1064 (9th Cir. 1991) ........................................................ 17, 18

Disabled in Action v. Bd. of Elections in City of New York,
  752 F.3d 189 (2d Cir. 2014) ................................................................. 12

EEOC v. Chrysler Corp.,
  733 F.2d 1183 (6th Cir. 1984) .............................................................. 17

Hindel v. Husted,
  875 F.3d 344 (6th Cir. 2017) .......................................................... 15, 16

Jones v. City of Monroe, MI,
  341 F.3d 474 (6th Cir. 2003) ................................................... 10, 16, 21

Libertarian Party of Ohio v. Husted,
  751 F.3d 403 (6th Cir. 2014) ................................................................ 19

Moltan Co. v. Eagle-Picher Indus., Inc.,
  55 F.3d 1171 (6th Cir. 1995) ................................................................ 22

Nat'l Fed. of the Blind v. Lamone,
  813 F.3d 494 (4th Cir. 2016) .......................................................... 11, 16

Nat'l Fed. of the Blind v. Lamone,
  2014 WL 4388342 (D. Md. Sept. 4, 2014) ...................................... 10, 12

Nat'l Org. on Disability v. Tartaglione,
  2001 WL 1231717 (E.D. Pa. Oct. 11, 2001) ........................................ 12

Nken v. Holder,
  556 U.S. 418 (2009) ............................................................................... 8

Obama for Am. v. Husted,
  697 F.3d 423 (6th Cir. 2012) ................................................................ 22

Reilly v. City of Harrisburg,

858 F.3d 173 (3d Cir. 2017) ...................................................................... 8
Roth v. Bank of the Commonwealth,
   583 F.2d 527 (6th Cir. 1978) .................................................................. 22
Sellers v. University of Rio Grande,
   838 F. Supp. 2d 677 (S.D. Ohio 2012) .................................................. 17
Silver Sage Partners, Ltd. v. City of Desert Hot Springs,
   251 F.3d 814 (9th Cir. 2001) .................................................................. 17
Tennessee v. Lane,
   541 U.S. 509 (2004).............................................................................. 21
Univ. of Tex. v. Camenisch,
   451 U.S. 390 (1981)................................................................................ 8
Urbain v. Knapp Bros. Manuf. Co.,
   217 F.2d 810 (6th Cir. 1954) .................................................................. 23
Winter v. Nat. Res. Def. Council, Inc.,
   555 U.S. 7 (2008)................................................................................... 7

Statutes

42 U.S.C. § 12101(b)(1) ............................................................................... 21
42 U.S.C. § 12102 ........................................................................................ 10
42 U.S.C. § 12131(1)(B) ................................................................................ 9
42 U.S.C. § 12132 .......................................................................................... 9
42 U.S.C. § 12188(a)(2) ............................................................................... 17
U.S. Const., amend. XXIV ........................................................................... 23

Rules

Federal Rule of Civil Procedure 65(c) ......................................................... 22

Regulations

28 C.F.R. § 35.130 ....................................................................................... 11
28 C.F.R. § 35.130(b)(1)(ii)......................................................................... 9, 13
28 C.F.R. § 35.130(b)(1)(iii)......................................................................... 9, 10
28 C.F.R. § 35.130(b)(7).............................................................................. 14, 15
28 C.F.R. § 35.160(b)(1).............................................................................. 9, 14
28 C.F.R. § 35.164 ....................................................................................... 15
§ 35.160(b)(2) ................................................................................... 9, 10, 15

## <u>STATEMENT OF QUESTION PRESENTED</u>

I.    Michigan's constitution guarantees every registered voter the right to cast an absentee ballot without providing a reason, but Defendants only provide absentee voters with a paper ballot, which cannot be completed independently and privately by Plaintiffs and other individuals who are blind, in violation of the Americans with Disabilities Act of 1990 and the Michigan Persons with Disabilities Civil Rights Act. Plaintiffs and those similarly situated face the impossible choice of venturing to the polls in-person in order to receive assistance with casting their ballot, and in so doing risking their health and possibly their lives, or foregoing their sacred right to vote because they cannot obtain the assistance required to complete a paper absentee ballot. Should the Court grant Plaintiffs' request for a preliminary injunction ordering Defendants to implement an accessible absentee voting system in order to guarantee Plaintiffs' sacred right to vote and to protect Plaintiffs and those similarly situated from irreparable harm?

## <u>MOST CONTROLLING AUTHORITY</u>

The most controlling authority for the relief sought includes: Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12131, *et seq;* Fed. R. Civ. P. 65; <u>Hindel v. Husted</u>, 875 F.3d 344, 349 (6th Cir. 2017); <u>Nat'l Fed. of the Blind v. Lamone</u>, 813 F.3d 494 (4th Cir. 2016);  Article III of the Michigan Persons with Disabilities Civil Rights Act, MCL § 37.1102, *et seq;* <u>Winter v. Nat. Res. Def. Council, Inc.</u>, 555 U.S. 7, 20 (2008); and <u>Sellers v. University of Rio Grande</u>, 838 F. Supp. 2d 677, (S.D. Ohio 2012).

## **INTRODUCTION**

This case involves perhaps the most fundamental right to a healthy democracy—the right to vote. Michigan's constitution guarantees all registered voters the right to vote by absentee ballot for any reason. However, Michigan provides only one option—a paper ballot which cannot be completed by independently and privately by individuals who are blind or who otherwise suffer from disabilities that limit their ability to access print.

Plaintiffs, two individuals who are blind, have suffered irreparable harm as a result of Defendants' illegal conduct, which has deprived them of their right to vote absentee privately and independently in the same manner enjoyed by other voters. Critically, Plaintiffs bring the instant cause of action in the midst of a global pandemic, which has magnified the harm being suffered, as they are now legally limited in their ability to travel and to access the polls in-person.[1] As a result, Plaintiffs face the horrific choice of venturing to their polling place to receive in-person assistance to vote, placing them at serious risk of illness or death, or perhaps foregoing voting all together if they are unable to obtain assistance completing an inaccessible paper ballot.

---

[1] The undersigned respectfully asks the Court to take judicial notice of the fact that this case is being litigated in the midst of a global pandemic.

Plaintiffs are likely to succeed on the merits of their claims. Defendants' conduct has long been in violation of the ADA, as well as the Michigan Persons with Disabilities Civil Rights Act (PDCRA), by failing to provide this critical service in a manner that is equally available to individuals with disabilities as it is to individuals without disabilities. Remarkably, the relief requested, the use of an electronic, online voting tool, can be implemented at little to no cost, and would not burden or otherwise alter Defendants' operations. A Court Order compelling this outcome will simply bring Michigan in-line with numerous other states, including Alaska, Maryland, Ohio, and Oregon, who have implemented such systems, many as a result of similar litigation across the country.

The balance of equities and public interest weigh heavily in favor of granting the requested relief. The injury suffered by Plaintiffs constitutes a violation of one of the most fundamental tenants of a healthy democracy—the right to a fair and equal opportunity to participate in the voting process. The need to uphold this right far outweighs any perceived harm to Defendants, particularly in light of the relative ease and minimal cost with which the remedy can be implemented. And, the requested relief promotes access to voting and will result in more Michiganders casting a vote in upcoming elections—an outcome that clearly advances the public interest.

Accordingly, Plaintiffs respectfully request that this Honorable Court issue a Preliminary Injunction requiring Defendants to implement an accessible absentee voting system that will afford Plaintiffs and those similarly situated an opportunity to vote independently and privately in advance of the May 5, 2020 elections.

## STATEMENT OF FACTS

**I.     Absentee Voting.**

Michigan affords all registered voters the right to vote by absentee ballot without needing to provide a reason or excuse.[2] The only option for Michigan registered voters who exercise their right to vote absentee is a paper ballot, which must be filled out by hand and returned by mail, fax, electronic mail, or personally delivered to the designated city or township clerk. Compl. ¶ 16. However, because the only option for absentee voting is a paper ballot, individuals who are blind or who have disabilities that limit their ability to access print materials, require assistance completing and returning their ballot, thereby depriving them of their right to vote privately and independently, the way non-disabled voters do. Compl. ¶ 18. Defendants further require that any individual who assists an individual with

---

[2] https://www.michigan.gov/sos/0,4670,7-127-1633_8716-21037--,00.html (last visited April 24, 2020) ("Due to the passage of the statewide ballot proposal 18-3, all eligible and registered voters in Michigan may now request an absent voter ballot without providing a reason.").

a disability in completing the paper absentee ballot must sign the ballot before it is returned to the designated city or township clerk.[3] Compl. ¶ 20.

Therefore, to vote absentee, Plaintiffs and those similarly situated must rely on the assistance of another person in order to physically mark their ballot. Such assistance results in Plaintiffs and those similarly situated being deprived of their fundamental right to vote privately and independently.

## II.    The Impact of COVID-19.

As the Court is well-aware, the instant lawsuit has been filed in the midst of an unprecedented global pandemic that has altered daily life for everyone, including Plaintiffs and those similarly situated. As a result, it is anticipated that many, if not all, Michigan voters will be required or will choose the option to vote absentee in upcoming elections. Unfortunately, this poses the threat of totally excluding many individuals who are similarly situated to Plaintiffs from the voting process. Specifically, individuals who are blind or otherwise unable to access print materials, and who also live alone, will lack the assistance required to vote at all, let alone in the independent, private manner they are legally entitled to. Blind

---

[3] https://www.michigan.gov/sos/0,4670,7-127-1633_8716-21037--,00.html (last visited April 24, 2020) ("If you received assistance voting the ballot, then the signature of the person who helped you must also be on the return envelope. Only you, a family member or person residing in your household, a mail carrier, or election official is authorized to deliver your signed absent voter ballot to your clerk's office.").

voters may also be forced to make the horrific choice of travelling to the polls in order to vote because they are unable to access the paper absentee ballot. Because Plaintiffs and those similarly situated typically do not drive cars, the trip to the polling place, likely via public transportation, presents an enormous risk of exposure to COVID-19. As a result, the need for immediate implementation of an accessible absentee voting system is more important than ever.

### III.    Accessible Voting Systems.

There are options available to Defendants that would provide Plaintiffs and those similarly situated with an equal opportunity to vote absentee independently and privately, which can be implemented at little to no cost. For example, the state of Maryland uses an online ballot marking tool that allows for accessible absentee voting for blind and print disabled individuals.[4] Ohio implemented a similar system following a lawsuit by individuals with disabilities virtually identical to the instant cause of action.[5] Maryland's online tool has been tested and is available to Defendants at no charge. Compl. ¶ 24.

---

[4] https://elections.maryland.gov/voting/accessibility.html (last visited April 24, 2020) ("If you have a disability and cannot mark your ballot independently, we offer an online tool to help you mark your ballot. With this tool, most voters with disabilities can make selections without help. If you would like to use this online tool, request an absentee ballot and check the box saying that you want to print your ballot from SBE's website.").

[5] https://www.ohiosos.gov/elections/voters/2020-primary-frequently-asked-questions/Accessibility/ (last visited April 24, 2020) ("Once you receive an email

Prime III is an additional tool that would allow for accessible absentee voting at little to no cost to Defendants.[6] Compl. ¶ 28. Prime III is open source technology, meaning it could be implemented at virtually no cost to Defendants. Compl. ¶ 30. Prime III has gained popularity among numerous national organizations that hold elections, including Self Advocates Becoming Empowered and the National Council on Independent Living. Compl. ¶ 29. These tools have been successfully used by numerous individuals similarly situated to Plaintiffs to vote independently and privately in elections held in other states.

## IV.    The Individual Plaintiffs and Their Plans for Voting.

Plaintiff Michael Powell is an individual who is blind and the current president of the Michigan Affiliate of the National Federation of the Blind (NFB). Compl. ¶ 10. Mr. Powell is a registered voter in the state of Michigan and he regularly votes in primary and general elections in his hometown of Warren, MI. *Id.* Mr. Powell would like the option of voting independently and privately by absentee ballot, particularly in light of the spread of COVID-19, which is expected

---

from the county board of election with a link to your  accessible absentee ballot, you can access and mark the ballot on your computer, laptop, smart phone, tablet, or other device that is connected to the internet. This allows you to use any assistive technology, such as screen readers, input devices, magnification, speech to text software, to mark the ballot privately and independently.  After marking your ballot, you must print your ballot and return it to the board of elections.").

[6] http://www.primevotingsystem.com/ (last visited April 24, 2020)

to limit his ability to physically appear at a polling station. *Id.* Mr. Powell is unable to complete a paper absentee ballot independently, because Defendants offer no accessible option to individuals who are blind, thereby denying him his full and equal right to vote. Exhibit 1, Declaration of Michael Powell.

Plaintiff Fred Wurtzel is the former president of the Michigan Affiliate of NFB, he currently serves as the president of the Capital Region Chapter of Michigan Affiliate of the National Federation of the Blind, and he continues to serve on Michigan NFB's board. Compl. ¶ 11. Mr. Wurtzel is also a regular voter who would like the option to vote absentee in all upcoming elections, particularly in light of the continuing spread of COVID-19. *Id.* ¶ 11. Mr. Wurtzel has also attended meetings with Defendants' staff during which he brought this issue to their attention. *Id.* Defendants' refusal to implement accessible absentee voting procedures violates Mr. Wurtzel's right to vote independently and privately the same way voters without disabilities do. Exhibit 2, Declaration of Fred Wurtzel.

## **<u>LEGAL STANDARD</u>**

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." <u>Winter v. Nat. Res. Def. Council, Inc.</u>, 555 U.S. 7, 20 (2008). "Once an applicant satisfies the first two factors, the traditional

[equitable relief] inquiry calls for assessing the harm to the opposing party and weighing the public interest. <u>Reilly v. City of Harrisburg</u>, 858 F.3d 173, 178 (3d Cir. 2017). The standard for a preliminary injunction are factors to be weighed, rather than rigid elements that must be satisfied. *Id.*

## **ARGUMENT**

## **I.  PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS.**

### **A. Standard of Review.**

Likelihood of success on the merits "requires more than a mere possibility that relief will be granted." <u>Nken v. Holder</u>, 556 U.S. 418, 420 (2009). However, the Supreme Court has also acknowledged that, "a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." <u>Univ. of Tex. v. Camenisch</u>, 451 U.S. 390, 395 (1981). Furthermore, "it is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them fair grounds for litigation and thus for more deliberative investigation." *Id.*

Title II of the ADA requires that "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be

subjected to discrimination by any such entity." 42 U.S.C. § 12132. Defendants are the heads of a public entity within the scope of Title II. 42 U.S.C. § 12131(1)(B).

In providing services such as a website or absentee voting, Defendants must afford Plaintiffs "an opportunity to participate in or benefit from the [. . .] service [. . .] equal to that afforded others." 28 C.F.R. § 35.130(b)(1)(ii). Defendants must provide Plaintiffs a service that is "as effective in affording equal opportunity" as is provided to others. 28 C.F.R. § 35.130(b)(1)(iii).

Public entities are also required to provide "appropriate auxiliary aids and services where necessary to afford individuals with disabilities . . . an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." 28 C.F.R. § 35.160(b)(1). The aids and services must be provided to **"protect the privacy and independence of the individual with a disability."** § 35.160(b)(2) (emphasis added). Therefore, Defendants must provide Plaintiffs, and those similarly situated, with an opportunity to participate in and benefit from its absentee voting program or service that is equal to and as effective as that afforded to individuals without disabilities.

### B. Plaintiffs are qualified individuals with disabilities.

To prove a violation of the ADA, Plaintiffs must establish that: (1) they have disabilities; (2) they are otherwise qualified to receive the benefits of the public service, program, or activity at issue; and (3) they were excluded from

participation in or denied the benefits of such service, program, or activity, or

otherwise discriminated against, on the basis of their disabilities. <u>Jones v. City of

Monroe, MI</u>, 341 F.3d 474, 477 (6th Cir. 2003). The first and second prongs of this

test are easily met as Plaintiffs are blind. 42 U.S.C. § 12102. As registered voters

who regularly exercise their right to vote, Plaintiffs are eligible and "qualified" to

receive the benefits of voting by absentee ballot in a private and independent

manner, the same way individuals without disabilities are able to.

### C. Defendants' failure to implement an accessible absentee voting method deprives Plaintiffs of their right to vote in a manner that is private and equal to the manner afforded to others under the ADA and violates well-settled law in this Circuit.

Plaintiffs also satisfy the third element because they have been denied the

right to vote absentee in a manner that is "equal to that afforded others." 28 C.F.R.

§ 35.160(b)(2). The only available method for voting absentee—a paper ballot that

must be filled out by hand, is "not as effective in affording equal opportunity" and

does not "protect the privacy and independence of the individual with a disability."

28 C.F.R. § 35.130(b)(1)(iii), § 35.160(b)(2).

Because Defendants offer absentee voting as a program or service available

to all Michigan voters they must afford voters with disabilities an equal

opportunity to access this program or service. *See, e.g.*, <u>Nat'l Fed.of the Blind v.

Lamone</u>, No. 14-1631, 2014 WL 4388342, at *11 (D. Md. Sept. 4, 2014) (holding

that Maryland's absentee voting program constitutes a distinct program or service under the ADA to which individuals with disabilities must have access because "it is a service that the State has opted to extend to *all* Maryland citizens") (emphasis original); *affirmed by* Nat'l Fed. of the Blind v. Lamone, 813 F.3d 494 (4th Cir. 2016) (upholding preliminary injunction and finding "[w]e have little trouble concluding from the record before us that Maryland's absentee voting program does not provide disabled individuals an opportunity to participate ... equal to that afforded to others") (internal quotation marks omitted) (emphasis added). Like other voters, Plaintiffs must have the option of voting absentee, particularly considering Michigan's policy of allowing no-reason absentee voting.

The absentee voting system that was struck down in Lamone was virtually identical to that employed by Defendants. The Court had little trouble upholding the ADA violation, reasoning that "[e]nsuring that disabled individuals are afforded an opportunity to participate in voting that is equal to that afforded others, 28 C.F.R. § 35.130, helps ensure that those individuals are never relegated to a position of political powerlessness." Lamone, 813 F.3d at 507.

Furthermore, when voters who are blind or have dexterity impairments must rely on the kindness, availability, honesty, and accuracy of a third party to mark their absentee ballots for them, they are denied an equal opportunity to participate in and enjoy the benefits of absentee voting. Courts throughout the country have

held that requiring voters with disabilities to obtain third-party assistance to vote, when all other voters can vote privately and independently, violates the ADA. *See* Disabled in Action v. Bd. of Elections in City of New York, 752 F.3d 189, 197, 199 (2d Cir. 2014); *Lamone*, 2014 WL 4388342, at *11-12; California Council of the Blind v. Cnty. of Alameda, 985 F. Supp. 2d 1229, 1238 (N.D. Cal. 2013) ("Congress intended for accommodations provided to individuals with disabilities to keep pace with rapidly changing technology of the times."); Nat'l Org. on Disability v. Tartaglione, No. Civ. A. 01-1923, 2001 WL 1231717, at *3-4 (E.D. Pa. Oct. 11, 2001).

These courts understood that when individuals with disabilities must rely on the assistance of another person to cast their votes for them, their autonomy and right to live independently in the world are severely constrained, as is their right to vote at all. While nondisabled individuals need only be registered to vote, disabled voters who are forced to obtain assistance to vote must not only be registered, but must rely on a third party to be available and willing to assist them with voting, and to do so accurately and honestly. Voting is too important a civic duty to require the blind "to rely on the honesty and carefulness of sighted individuals." Am. Council of the Blind v. Paulson, 525 F.3d 1256, 1270 (D.C. Cir. 2008). As the Second Circuit reasoned in Disabled in Action, "[t]he right to vote should not be contingent on the happenstance that others are available to help." 752 F.3d at 199.

This is particularly so given that "one of the central features of voting, and one of its benefits, is voting privately and independently." <u>California Council of the Blind</u>, 985 F. Supp. 2d at 1238. Requiring Plaintiffs to obtain assistance to vote absentee "at best provides these individuals with an inferior voting experience 'not equal to that afforded others' . . . [because] [b]lind and visually impaired voters are forced to reveal a political opinion that others are not required to disclose." *Id.* at 1239; *quoting* 28 C.F.R. § 35.130(b)(1)(ii).

### D. Defendants' illegal conduct places Plaintiffs and those similarly situated at unnecessary risk of serious illness or death.

Furthermore, the need for accessible absentee voting has become more pressing in light of the impact of COVID-19 on upcoming elections, which is expected to result in significantly higher absentee voting. Although Michigan offers all voters without disabilities the opportunity to vote absentee privately and independently by making available only a paper absentee ballot, Defendants require Plaintiffs to obtain sighted assistance to participate in absentee voting, thereby sacrificing the privacy of their ballots.

And, our current circumstances leave Plaintiffs and those similarly situated with an impossible choice—forego voting in a private manner by obtaining assistance completing the paper absentee ballot—or risk their health, or perhaps their life, by travelling to a polling station with accessible, in-person voting methods available. Blind individuals who are forced to vote in-person are uniquely

susceptible to the threat of COVID-19, as they are more likely to rely on services such as public transportation to travel. The choice becomes even more complicated considering ongoing stay at home orders, leaving those who live alone with few if any options to obtain assistance completing a paper absentee ballot.

### E. The Sixth Circuit in *Hindel* ruled that that the implementation of an accessible absentee ballot system does not fundamentally alter the state's programs or services.

The solution for ending Michigan's discriminatory treatment of Plaintiffs and those similarly situated is relatively straightforward—Defendants must make available accessible absentee voting technology that would allow Plaintiffs to vote absentee privately and independently. There are at least two absentee voting technologies, Prime III and Maryland's online ballot marking tool, that are free of charge, secure, and would provide for accessible absentee voting. *See supra.* As such, Defendants must make one of these technologies, or an alternative accessible absentee voting system, available to Plaintiffs as either a reasonable modification to its absentee voting program or as an auxiliary aid or service. *See* 28 C.F.R. § 35.130(b)(7) (requiring that public entities "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability . . ."); 28 C.F.R. § 35.160(b)(1) (requiring that public entities "furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including applicants, participants,

companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity"). Indeed, the Title II regulations require public entities to provide auxiliary aids and services that will "protect the privacy and independence of the individual with a disability." 28 C.F.R. § 35.160(b)(2).

Defendants may only refuse to make an accessible absentee voting system available to Plaintiffs if they can prove that doing so would either fundamentally alter the nature of the absentee voting program or, in the case of providing an auxiliary aid or service, that it would pose an undue financial or administrative burden. 28 C.F.R. § 35.130(b)(7); 28 C.F.R. § 35.164. Defendants will not be able to establish that making absentee voting accessible would fundamentally alter the nature of the absentee voting program – all votes would still be cast in absentia and counted in the election results. Furthermore, because there are voting systems available that have been used successfully in statewide elections in other states, have been found to be secure, and are available at no cost, Defendants will not be able to establish that implementing one of these accessible absentee voting systems would pose an undue financial or administrative burden. *See* Hindel v. Husted, 875 F.3d 344, 349 (6th Cir. 2017) ("a state procedural requirement may not excuse a substantive ADA violation.").

In Lamone, the Fourth Circuit rejected the defendant's arguments that

implementing an online ballot marking tool would pose an unreasonable burden,

reasoning:

> [B]ecause the tool has already been developed, there does not appear
> to be any substantial cost or implementation burden that would need
> to be borne by Maryland to make the tool available for use. On the
> facts before us, we conclude that plaintiffs' proposed use of the online
> ballot marking tool is a reasonable modification to Maryland's
> absentee voting policies and procedures. <u>Lamone</u>, 813 F.3d at 508.

Similarly, the Court ruled that the proposed modification did not

constitute a fundamental alteration, reasoning: "requiring public entities to

make changes to rules, policies, practices, or services is exactly what the

ADA does."[7] *Id.* at 508; *quoting* <u>Jones</u>, 341 F.3d at 487; *see also* <u>Hindel</u>, 875

F.3d at 349. It is well-established that the proposed relief is reasonable, even

before the arrival of COVID-19.

---

[7] In the underlying proceedings, the District Court held a three-day bench trial and found that the ballot marking tool "is reasonably secure, and safegurards disabled voters' privacy..." <u>Lamone</u>, 813 F.3d at 509. Plaintiffs respectfully ask the Court to grant the requested preliminary injunction on the instant motion, based on the supporting papers and oral argument. Plaintiffs further respectfully submit that a full evidentiary hearing is likely unnecessary in light of the requested accommodation being widely used throughout the United States, as a secure and accessible method of absentee voting, following a plethora of litigation.

## II. PLAINTIFFS WILL SUFFER IRREPERABLE HARM IN THE ABSENCE OF PRELIMINARY RELIEF.

Irreparable harm may be presumed when a defendant has violated a civil rights statute such as the ADA. *See* Sellers v. University of Rio Grande, 838 F. Supp. 2d 677, 687 (S.D. Ohio 2012) (noting support for the proposition that "when Congress has enacted a statute such as the ADA to prohibit discrimination against individuals with disabilities, the occurrence of the very discrimination Congress sought to prevent is the type of irreparable injury that may support the issuance of an injunction").[8] Irreparable harm may also be presumed when, as is the case with the ADA, the statute explicitly provides for injunctive relief. *See* 42 U.S.C. § 12188(a)(2) ("Where appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by this subchapter."); CSX Transp., Inc. v. Tennessee State Bd. of Equalization, 964 F.2d 548, 551 (6th Cir. 1992); Burlington N.R.R. Co. v. Dep't of Revenue, 934 F.2d 1064, 1074 (9th Cir. 1991).

---

[8] *See also* Silver Sage Partners, Ltd. v. City of Desert Hot Springs, 251 F.3d 814, 827 (9th Cir. 2001) ("[W]here a defendant has violated a civil rights statute, we will presume that the plaintiff has suffered irreparable injury from the fact of the defendant's violation"); EEOC v. Chrysler Corp., 733 F.2d 1183, 1186 (6th Cir. 1984) (holding that the injuries facing the plaintiffs, such as loss of work, loss of future prospects for work, and infliction of emotional harm, were the type of injuries Congress sought to avoid through the ADEA and thus constituted irreparable harm).

Furthermore, this District has recently confirmed the importance of preserving voting rights during COVID-19. Esshaki v. Whitmer, No. 20-10831 (Attached as Exhibit 3), addressed the question of whether Michigan's requirement that candidates seeking elected office obtain a certain number of signatures should be altered in light of the restrictions currently placed on Michigan residents as a result of COVID-19. The Court noted that "[c]andidates typically gather these signatures door-to-door, or in high-traffic public places like outside malls, grocery stores" and other crowded areas, with signatures being due on April 21, 2020. Exhibit 3, pg. 2. The Court noted that the rapid spread of COVID-19 has eliminated virtually all public gatherings, and would even make the process of going door-to-door to collect signatures a misdemeanor. *Id.* at 3. Granting the plaintiff's request for temporary restraining order, the Court reasoned that "[u]nder these unique historical circumstances [...] the Court finds that the State's actions [...] and the statutory ballot-access requirements, operate in tandem to impose a severe burden on Plaintiff's ability to seek elected office, in violation of his First and Fourteenth Amendment rights..." *Id.* at pg. 4. The Court granted the preliminary injunction, and ordered Defendants Gretchen Whitmer, Jocelyn Benson, and Jonathan Brater to reduce the number of signatures required for the ballot by 50% and allowing the use of electronic-signatures for prospective political candidates. *Id.* at 40.

On the issue of irreparable harm, the Court wrote" "[b]allot access cases such as this implicate First Amendment rights, and when such rights are violated— as when a candidate is unconstitutionally deprived the right to access to the ballot—irreparable harm can be presumed." *Id.* at 27; *citing* <u>Libertarian Party of Ohio v. Husted</u>, 751 F.3d 403, 412 (6th Cir. 2014).

The Court confirmed the broad need for modifications to election policies and procedures in light of the restrictions and limitations faced by the people of Michigan during the spread of the spread of COVID-19. And, voting rights are even more critical to a healthy and vibrant democracy than access to the ballot. Here, just as in <u>Esshaki</u>, injunctive relief is necessary to ensure full and equal voting rights for Plaintiffs and those similarly situated.

If the Court does not grant a preliminary injunction requiring Defendants to institute an accessible absentee voting system prior to the upcoming primary and general elections, Plaintiffs will have no choice but to forego their right to vote absentee, or sacrifice their right to privacy and independence when casting their ballot. Furthermore, there exists a significant likelihood that Plaintiffs only voting option in the upcoming elections will be to vote by absentee ballot due to the spread of COVID-19. In this scenario, there is a real and imminent threat that Plaintiffs will be totally excluded from voting if they cannot obtain assistance in completing the paper absentee ballot, or be forced to leave their homes, which

poses a serious threat of illness or death. The impending harm, the loss of the opportunity to participate in the democratic process, is irreparable and cannot be redressed with any amount of monetary damages.

### III. THE BALANCE OF EQUITIES STRONGLY FAVORS PLAINTIFFS.

Fundamental principles of democracy strongly favor guaranteeing Plaintiffs have reasonable access to voting, including absentee voting, which is a right of the voters of Michigan. Plaintiffs and those similarly situated will be faced with the choice of sacrificing their right to privacy during the voting process, or foregoing voting all together. Similarly, even if Plaintiffs request an absentee ballot as it currently exists, they will be totally unable to complete the ballot if they cannot obtain assistance to complete it. This effectively results in Plaintiffs, and numerous similarly situated individuals, being excluded from full participation in the voting process. Further, it is anticipated that if this Court were to deny a preliminary injunction, Plaintiffs and those similarly situated may be forced to venture to the polls during the pandemic, many via public transportation, to obtain in-person voting assistance, placing themselves at imminent risk of illness or death.

Defendants, on the other hand, will suffer minimal if any harm if a preliminary injunction is granted. As discussed above, there are available technologies that are open source, in other words, free to Defendants. *See supra.* And, in fact, adopting an accessible method of absentee voting will streamline the

voting process and provide for a more robust and inclusive democracy.

Turning again to <u>Esshaki</u>, the Court, examining the burden to the state, noted that, even if the state could present a compelling reason for strictly maintaining its ballot signature requirements, the "compelling interest is not narrowly tailored to the context of the COVID-19 pandemic." <u>Esshaki</u> at 25. Assuming, *arguendo*, that the state can present a compelling reason for maintaining its out-of-date paper ballot procedures, such reasoning should be examined in the context of COVID-19, which is fully expected to impact upcoming primary and general elections.

## IV. AN INJUNCTION WILL SERVE THE PUBLIC INTEREST.

Congress has made clear in enacting the ADA that the public interest lies in the eradication of discrimination against persons with disabilities, declaring that the ADA's purpose is "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." <u>Tennessee v. Lane</u>, 541 U.S. 509, 516 (2004) (quoting 42 U.S.C. § 12101(b)(1)). In the context of preliminary injunctions, this Circuit has firmly held that "[t]he public interest is clearly served by eliminating the discrimination Congress sought to prevent in passing the ADA." <u>Jones</u>, 341 F.3d at 490; *accord* <u>Deck v. City of Toledo</u>, 29 F. Supp. 2d 431, 434 (N.D. Ohio 1998) (noting that "there is a significant public interest in eliminating discrimination against individuals with disabilities") (internal quotation marks omitted).

And, as discussed above, a preliminary injunction would result in more citizens being afforded the opportunity to vote, thereby advancing one of the fundamental tenants of democracy. Obama for Am. v. Husted, 697 F.3d 423, 436-37 (6th Cir. 2012) ("the public has a strong interest in exercising the fundamental political right to vote. That interest is best served by favoring enfranchisement and ensuring qualified voters' exercise of their right to vote is successful. The public interests therefore favors permitting as many qualified voters to vote as possible.") (internal quotation marks and citations omitted). A preliminary injunction advances the purpose of the ADA, promotes the right to vote, and thus serves the public interest. The requested relief also promotes the state and federal governments' policy of keeping as many citizens as possible at home—particularly vulnerable populations—such as individuals with disabilities, in order to avoid overburdening the healthcare system.

## V. PLAINTIFFS SHOULD NOT BE REQUIRED TO POST A BOND.

The Sixth Circuit has interpreted Federal Rule of Civil Procedure 65(c) to provide the district court discretion to determine whether a bond is required for security. Moltan Co. v. Eagle-Picher Indus., Inc., 55 F.3d 1171, 1176 (6th Cir. 1995) (finding that "the rule in our circuit has long been that the district court possesses discretion over whether to require the posting of security"); *citing* Roth v. Bank of the Commonwealth, 583 F.2d 527, 539 (6th Cir. 1978), *cert. denied*,

440 U.S. 944 (1979); <u>Urbain v. Knapp Bros. Manuf. Co.</u>, 217 F.2d 810, 815-16 (6th Cir. 1954), *cert. denied*, 349 U.S. 930 (1955)). In this case, Plaintiffs should not be required to post a bond given that they have brought this case to vindicate their federal civil rights, the balance of equities weighs strongly in their favor, and requiring a bond would effectively amount to a poll tax in violation of the 24th Amendment. *See, e.g.*, <u>Am. Sys. Consulting, Inc. v. Devier</u>, 514 F. Supp. 2d 1001, 1010 (S.D. Ohio 2007) ("Having considered the equitable circumstances of this case, the Court in its discretion concludes that not posting of a bond is warranted."); *see* U.S. Const., amend. XXIV.

## <u>CONCLUSION</u>

Absent preliminary and permanent injunctive relief, Plaintiffs and those similarly situated face the very real prospect of being totally excluded from the voting process, being forced to sacrifice their right to vote privately, or even worse, being put at risk of serious illness or death if forced to vote at the polls instead of by absentee ballot. Accordingly, Plaintiffs respectfully request that this Honorable Court grant their Motion for Preliminary Injunction and order Defendants to implement an accessible absentee voting method in time for the May 5, 2020 primary elections and all future elections in the State of Michigan.

Respectfully submitted,

/s/ Jason M. Turkish
Jason M. Turkish (P76310)

Ryan T. Kaiser (P79491)
Melissa M. Nyman (CA Bar #293207)
NYMAN TURKISH PC
20750 Civic Center Drive, Ste. 290
Southfield, MI 48076
Phone: 248-284-2480
Fax: 248-262-5024
Jason.Turkish@NymanTurkish.com
Ryan.Kaiser@NymanTurkish.com
Melissa.Nyman@NymanTurkish.com

David Mittleman (P37490)
Grewal Law, PLLC
2290 Science Parkway
Okemos, MI 48864
Phone: 517-393-3000
Fax: 517-393-3003
dmittleman@4grewal.com

Dated: April 25, 2020                          *Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that the foregoing document and attached exhibits were electronically filed on April 25, 2020, and were simultaneously prepared to be served via U.S. Mail Certified/Return Receipt Requested on Defendants at the following addresses:

> Michigan Attorney General
> PO Box 30212
> Lansing, MI 48909
>
> Ms. Jocelyn Benson
> 430 W. Allegan Street
> Richard H. Austin Building, 4th Floor
> Lansing, MI 48918
>
> Mr. Jonathan Brater
> Michigan Department of State
> Bureau of Elections
> PO Box 20126
> Lansing, MI 48901-0726
>
> Governor Gretchen Whitmer
> P.O. Box 30013
> Lansing, Michigan 48909

In addition, given the exigency of this matter, counsel has provided notice to the Michigan Attorney General's Office by forwarding a copy of the complaint and instant motion by electronic mail on April 25, 2020.

<div align="right">

/s/ Jason M. Turkish
Jason M. Turkish (P76310)

</div>