## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF MICHIGAN

MICHAEL POWELL, and
FRED WURTZEL,
individually and on behalf of those
similarly situated,

and,

THE NATIONAL FEDERATION OF THE
BLIND OF MICHIGAN,

      Plaintiffs,

  v.

JOCELYN BENSON,
MICHIGAN SECRETARY OF STATE,
in her official capacity, and

JONATHAN BRATER,
MICHIGAN DIRECTOR OF ELECTIONS,
in his official capacity,

      Defendants.

_____/

Case No. 20-11023

Hon. Gershwin Drain
Mag. Judge Michael J. Hluchaniuk

**ORAL ARGUMENT REQUESTED**

## PLAINTIFFS' MOTION FOR JUDGMENT OF CIVIL CONTEMPT AGAINST JOCELYN BENSON, JONATHAN BRATER, ERIK GRILL, AND HEATHER MEINGAST, AND TO ENFORCE THE CONSENT DECREE [ECF # 31]

NOW COME Plaintiffs, by and through counsel, and pursuant to Fed. R.

Civ. P. 70, hereby move this Honorable Court to exercise its authority to enforce

the May 19, 2020 Consent Decree [ECF # 31] and hold Defendants Jocelyn

Benson, Jonathan Brater, and Attorneys Erik Grill and Heather Meingast in

Contempt of Court for failing to comply with the terms of the Consent Decree.

Defendants and their counsel have made material misrepresentations to the Court regarding the facts underlying this dispute and have failed to act in good faith to implement the requirements of the Consent Decree. Therefore, Plaintiffs respectfully ask this Honorable Court to issue an appropriate order enforcing the Consent Decree, and sanctioning Defendants and their counsel, as well as ordering expedited briefing. In support thereof, Plaintiffs rely on the attached brief and exhibits.

Pursuant to Local Rule 7.1, on June 26, 2020 Attorney Jason Turkish contacted counsel for Defendants to seek concurrence in the relief sought herein. Such concurrence was not immediately forthcoming.

Respectfully submitted,

/s/ Eve Hill
Eve Hill (MD Federal Bar# 19938)
BROWN, GOLDSTEIN & LEVY LLP
120 E. Baltimore St., Ste. 1700
Baltimore, MD 21202
Phone: 410-962-1030
Fax: 410-385-0869
ehill@browngold.com

*Counsel for Plaintiff The*
*National Federation of the*
*Blind of Michigan*

/s/ Jason M. Turkish
Jason M. Turkish (P76310)
Ryan T. Kaiser (P79491)
Melissa M. Nyman (CA Bar # 293207)
NYMAN TURKISH PC
20750 Civic Center Dr., Ste. 290
Southfield, MI 48076
Phone: 248-284-2480
Fax: 248-262-5024
Jason.Turkish@NymanTurkish.com
Ryan.Kaiser@NymanTurkish.com
Melissa.Nyman@NymanTurkish.com

David Mittleman (P37490)
GREWAL LAW, PLLC
2290 Science Parkway
Okemos, MI 48864
Phone: 517-393-3000
Fax: 517-393-3003
dmittleman@4grewal.com

Dated: June 29, 2020                    *Counsel for Plaintiffs Powell and Wurtzel*

## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF MICHIGAN

MICHAEL POWELL, and
FRED WURTZEL,
individually and on behalf of those
similarly situated,

Case No. 20-11023

Hon. Gershwin Drain
Mag. Judge Michael J. Hluchaniuk

and,

THE NATIONAL FEDERATION OF THE
BLIND OF MICHIGAN,

**Oral Argument Requested**

       Plaintiffs,

  v.

JOCELYN BENSON,
MICHIGAN SECRETARY OF STATE,
in her official capacity, and

JONATHAN BRATER,
MICHIGAN DIRECTOR OF ELECTIONS,
in his official capacity,

       Defendants.

_____/

## PLAINTIFFS' MOTION FOR JUDGMENT OF CIVIL CONTEMPT AGAINST JOCELYN BENSON, JONATHAN BRATER, ERIK GRILL, AND HEATHER MEINGAST, AND TO ENFORCE THE CONSENT DECREE [ECF # 31]

## TABLE OF CONENTS

INDEX OF AUTHORITIES ..................................................................... iii

QUESTION PRESENTED ..................................................................... iv

MOST CONTROLLING AUTHORITY ................................................. v

INTRODUCTION . ................................................................................. 1

FACTUAL BACKGROUND. ................................................................ 4

    A.    The Consent Decree. .................................................... 4

    B.    June 26, 2020 E-mail from Jonathan Brater. ........................ 7

    C.    June 26, 2020 E-Mail from Erik Grill. ................................ 7

    D.    Online Absentee Ballot Request System. ............................ 9

    E.    Press Release. .............................................................. 10

ARGUMENT ........................................................................................ 10

    I.    LEGAL STANDARD. ...................................................... 10

    II.    DEFENDANTS ARE IN CONTEMPT BECAUSE THEY DID
             NOT ACT IN GOOD FAITH TO IMPLEMENT A
             RAVBM SYSTEM FOR THE AUGUST ELECTION. ..................... 12

    III.    DEFENDANTS ARE IN CONTEMPT BY FAILING TO
             OFFER ONLINE ABSENTEE VOTING APPLICATIONS IN
             AN EQUAL MANNER. ....................................................... 15

    IV.    DEFENDANTS ARE IN CONTEMPT BY FAILING TO
             TIMELY ISSUE A PRESS RELEASE AND POST THE
             CONSENT DECREE. ......................................................... 17

CONCLUSION ..................................................................................... 18

# INDEX OF AUTHORITIES

Page(s)

Cases

Frew v. Gilbert,
   109 F.Supp.2d 579 (E.D. Tex. 2000)............................................................. 11, 13
Glover v. Johnson,
   934 F.2d 703 (6th Cir. 1991) ......................................................................... 11
Gompers v. Buck's Stove & Range Co.,
   221 U.S. 418, 31 S. Ct. 492, 55 L. Ed. 797 (1911) ............................................. 1
John B. v. Menke,
   176 F. Supp.2d 786 (M.D. Tenn. 2001) ....................................................... 10, 11
Roth Steel Products v. Sharon Steel Corp.,
   705 F.2d 134 (6th Cir. 1983) ........................................................................ 14
Shillitani v. United States,
   384 U.S. 364 (1966).................................................................................... 11
Spallone v. U.S.,
   493 U.S. 265 (1990).................................................................................... 11
Swann v. Charlotte-Mecklenburg Bd. of Ed.,
   402 U.S. 124 (1971).................................................................................... 11
U.S. v. State of Tenn.,
   925 F.Supp. 1292 (W.D. Tenn. 1995) .............................................................. 11
United State v. Bayshore Assoc, Inc.,
   934 F.2d 1391 (6th Cir. 1991) ....................................................................... 11
Vanguards of Cleveland v. City of Cleveland,
   23 F.3d 1013 (6th Cir. 1994) ........................................................................ 11
Williams v. Vukovich,
   720 F.2d 909 (6th Cir. 1983) ........................................................................ 11

Statutes

42 U.S.C. § 12101 ......................................................................................... 10

Regulations

28 C.F.R. § 35.130(b)(1)(ii)-(iii) ...................................................................... 11, 15
28 C.F.R. § 35.160(b)(1)................................................................................. 11

## <u>QUESTION PRESENTED</u>

Whether the Court should hold Defendants Jonathan Brater and Jocelyn Benson, as well as Attorneys Erik Grill and Heather Meingast in civil contempt and award appropriate relief where they have failed to comply with the Consent Decree entered by the Court, have made material misrepresentations to the Court, and have acted in bad faith throughout the litigation and implementation of the ordered relief?

## **MOST CONTROLLING AUTHORITY**

The most controlling authority for the relief sought includes: Fed. R. Civ. P. 70; John B. v. Menke, 176 F. Supp. 2d 786 (M.D. Tenn. 2001); Swann v. Charlotte-Mecklenburg Bd. of Ed., 402 U.S. 124 (1971); and 28 C.F.R. § 35.130(b)(1)(ii)-(iii).

# INTRODUCTION

"If a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls the `judicial power of the United States' would be a mere mockery." Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 450, 31 S. Ct. 492, 55 L. Ed. 797 (1911).

On May 19, 2020, the Court entered a Consent Decree that had been negotiated by the parties[1] requiring Defendants to implement a Remote Accessible Vote-by-Mail System (RAVBM) for the August election in order to ensure blind voters can cast an absentee ballot privately and independently, just as non-disabled individuals are able to. Despite their representations to the Court that a Request for Proposals ("RFP") for an RAVBM system was already in process in early May, Defendants and their counsel flouted the Court's order and waited five weeks to issue the RFP. Defendants' conduct violates the terms of the Order and, if permitted, will allow Defendants to disenfranchise blind citizens in the August elections.

---

[1] Plaintiffs filed a motion for status conference on Friday June 26, 2020, based on the belief that Defendants' violations of the Consent Decree were limited to the introduction of a new online absentee ballot application request system that did not offer blind voters an opportunity to request an accessible absent voter ballot. *See* ECF # 31. Since that time, additional investigation has revealed that Defendants have no intention of complying with multiple provisions of the Consent Decree, most notably they have no plan to implement an RAVBM system prior to the August 2020 Election, thus prompting the filing of the instant motion.

Over the past week, numerous important developments have come to Plaintiffs' attention, including Defendants' public acknowledgement of their violations of the Consent Decree.[2] Most notably, Defendants informed the public, prior to informing Plaintiffs' counsel, that they will not be implementing a RAVBM system for the August 2020 elections because they failed to issue the RFP until last week.[3] In so doing, Defendants have treated the Consent Decree as optional rather than mandatory.

In addition, Defendants just introduced a method for voters to apply for an absentee ballot online that is unusable and inaccessible to the blind. As a result, non-disabled voters are now receiving their absentee ballots—while the blind cannot even submit a request.

Finally, the contemptuous conduct extends beyond Defendants and includes their counsel, Erik Grill and Heather Meingast. Mr. Grill made material misrepresentations during the status conference before this Honorable Court,

---

[2] Despite the Consent Decree's requirement that Defendants "continue to ensure that all persons with print disabilities have an opportunity that is equal to the opportunity the State affords to all other persons to vote privately and independently at their designated, local Polling Place," according to a recent news story, Michigan Supreme Court Justice Richard Bernstein, who is blind, was recently turned away from his local clerk's office because they did not have the information and training necessary to assist him in requesting an absentee ballot. ECF # 32-1, pg. 3.

[3] Counsel for Defendants have repeatedly cited the RFP process as the reason a RAVBM cannot be immediately implemented—but failed to initiate the process until it was too late to ensure compliance with the Consent Decree.

claiming the State had already prepared an RFP, when in fact no such RFP was issued until June 24, 2020.[4] Similarly, Mr. Grill and Ms. Meingast violated the Consent Decree by failing to comply with its reporting requirements. Instead of informing Plaintiffs of Defendants' determination not to comply with its obligations, as required by the Consent Decree, Mr. Grill allowed his client, Defendant Brater, to share developments directly with Plaintiffs Wurtzel and Powell via email, and attempted to facilitate a meeting between the parties outside the presence of counsel.[5] Defendant Benson then issued a June 26, 2020 press release publicly announcing Defendants' non-compliance with the Consent Decree,[6] without informing Plaintiffs' counsel. Finally, while Defendants announced their plans not to implement accessible absentee voting on June 26, they never complied with the Consent Decree's requirement to issue a press release

---

[4] *See* Exhibit 1, May 8, 2020 Status Conference Transcript, pg. 6 (Grill: "I believe the state is in the process of releasing an RFP for a system...").

[5] *See* Exhibit 2, June 26 Email from Erik Grill, pg. 2 ("The RFP was issued Wednesday. At that time, looking at the calendar, it became apparent that the purchased system would likely not be in place in time for the August primary [...] That information had been relayed to Heather and I to provide to you, but due to deadlines in a variety of other matters and because I was on a lay-off day on Thursday and prohibited from working, we did not notice..."

[6] https://www.michigan.gov/sos/0,4670,7-127--533105--,00.html (last visited June 28, 2020) ("accessible application and ballot are being used for the August election as the state develops a permanent solution for November. For November, the state has launched a request for proposals and is accepting public bids now.").

and post a summary of the Consent Decree's requirements within 10 days of its approval by the Court.

Defendants and their counsel have demonstrated contempt for this Court, the Consent Decree, and the blind. Collectively, they failed to take the first basic step of issuing an RFP to procure an accessible voting system in time for August, and they have introduced new voting programs without any accommodation of the needs of the blind. The potential consequences of this contemptuous conduct are catastrophic, and may only be remedied through swift and thorough remedial measures, including, but not limited to, discovery, an evidentiary hearing/oral argument, an order to appear and to show-cause, a public statement concerning the contempt, an order to implement an RAVBM system in time for the August election, an award of damages and attorneys' fees to the named plaintiffs, and any other relief this Honorable Court deems just and proper.

## **FACTUAL BACKGROUND**

### **A. The Consent Decree.**

On May 19, 2020, the Honorable Court signed the Consent Decree, which ostensibly resolved the instant dispute. ECF # 31. The purpose of the Consent Decree was to ensure equal access to voting for the blind and those with print disabilities. ECF # 31, pg. 4-5. The Consent Decree provides that Defendants:

> 2.  Shall not provide individuals with print disabilities, including Plaintiffs and their members, an unequal opportunity to participate in

4

> or benefit from aids, benefits, or services, or provide an aid, benefit, or service <u>that is not as effective in affording equal opportunity to gain the same result or benefit as provided to others with respect to Michigan's Voting Program,</u> …. *Id.* (emphasis added)

> 3.  Shall take the necessary and timely steps to ensure that it furnishes appropriate auxiliary aids and services where necessary to afford individuals with print disabilities, including Plaintiffs and their members, an equal opportunity to participate in, and enjoy the benefits of, the services, programs, and activities of Michigan's Voting Program…. *Id.*

The "Voting Program" is specifically defined to include

> (i) the opportunity provided to Michigan residents to vote privately and independently in-person at designated Polling Places or to vote by mail/absentee in lieu of voting in person; (ii) the provision of sample ballots to Michigan residents in advance of Elections; and (iii) <u>the processes for Michigan voters to request, receive, mark, and submit ballots</u>. *Id.* (emphasis added)

Under the Consent Decree's terms, Defendants are specifically required to "acquire a [RAVBM] system … that shall allow voters with print disabilities to review and mark vote-by-mail ballots electronically, privately, and independently..." *Id.* at 6. The Consent Decree requires this system to be in place in time for the August 2020 primary election, and further requires Defendants to notify Plaintiffs of the specific RAVBM selected at least 15-days prior to its acquisition. *Id.*

The only exception to the RAVBM being operational in time for August is "[i]f <u>unforeseen circumstances beyond the state's control</u> make it <u>impracticable</u> to acquire a RAVBM in time for the August 2020 elections..." *Id.* (emphasis added).

5

If such unforeseen acts of God occur, the State is required to revert to making its UOCAVA voting system accessible for the August 2020 primary—the same system that was implemented as a temporary solution in the May 2020 election.[7] *Id.* Defendants are required to "inform Plaintiffs immediately and no later than June 29, of the unforeseen circumstances and their impact on acquisition of the RAVBM." *Id.* To date, no such explanation has been provided to Plaintiffs.

In addition to the RAVBM, the Consent Decree requires Defendants to offer "electronic forms in HTML format through which voters with disabilities can independently request vote-by-mail ballots and certify that they are voters with disabilities. Such certification shall be no more burdensome for voters with disabilities than is required by the laws and regulations that govern the RAVBM." *Id.* at 7. The Decree also requires Defendants "continue to ensure that all persons with print disabilities have an opportunity that is equal to the opportunity the State affords to all other persons to vote privately and independently at their designated, local Polling Place…." The Consent Decree includes notice and training requirements to ensure that its material provisions are effectively implemented, *id.,* and required Defendants to issue a press release within ten days of the effective

---

[7] The UOCAVA ballot was a minimally workable last-minute solution for the small, local elections in May 2020. However, it will be cumbersome and unreliable in a large primary election, such as August. Plaintiffs did not bargain for a repeat of May, they bargained for the timely implementation of a permanent solution.

date of the Decree and post a copy of the Consent Decree to the Secretary of State's website with a summary of its requirements. *Id.*, pg. 8.

### B. June 26, 2020 E-mail from Jonathan Brater.

On June 26, 2020, Defendant Jonathan Brater sent an email to members of the blind and disability communities providing updates on voting access in the upcoming elections and inviting them to attend a meeting with Defendant Brater to discuss the progress of improving absentee voting accessibility. Exhibit 3, June 26 Email from Jonathan Brater.[8]

Specifically, Defendant Brater's email announced the State's intention to violate the Consent Decree by not launching a RAVBM in time for the August election. Ex. 3, pg. 1. Defendant Brater did not identify any "unforeseen circumstances beyond the state's control" that prevented the State from implementing a RAVBM prior to the August election.

### C. June 26, 2020 E-Mail from Erik Grill.

At the May 8, 2020 Status Conference, Attorney Erik Grill told the Court that he was aware of the primary RAVBM systems available, and "that the state is

---

[8] Counsel for Plaintiffs were never informed that this communication was being issued, and in fact, both Plaintiffs Michael Powell and Fred Wurtzel were included on the email list. Defendants' counsel should have advised them against engaging in communications with represented parties outside the presence of attorneys—particularly communications that would disclose a failure to perform obligations under the Consent Decree in the instant matter.

in the process of releasing an RFP for a system at this point..." Exhibit 1, May 8, 2020 Transcript, pg. 6. At that same status conference, Mr. Grill insisted on a compressed timeline to ensure the State would have time to implement a RAVBM for the August election. *Id.* Again on May 14, Attorney Grill told the Court he thought the issuance of the RFP was "imminent." Exhibit 4, May 14, 2020 Status Conference, p. 16.[9]

In his declaration, Defendant Brater claimed, under penalty of perjury, that over the past year he had participated in multiple meetings with disability advocates, vendors, and election experts. ECF # 17-2, Dec. of Brater, pg. 8. Defendant Brater further claimed that he had engaged in recent follow up meetings with vendors. *Id.* Defendant Brater also claimed that it would be impossible for the State to implement an accessible ballot option in time for the May 2020 election. *Id.*

Despite Defendant Brater's and Mr. Grill's claims that the State was well underway with the selection of a RAVBM system, on June 26, 2020, Mr. Grill informed counsel for Plaintiffs that Defendants had no intention of implementing such a system in time for August.[10] Exhibit 2, June 26 Email from Erik Grill.

---

[9] Because Mr. Grill had previously expressed to Plaintiffs' counsel that the RFP had already been issued, Mr. Turkish expressed surprise. *See Id.* at p. 18 ("now we're hearing the RFP hasn't even gone out yet")

[10] Plaintiffs note that their Counsel, Jason Turkish, emailed Mr. Grill regarding his concerns for holding a meeting between the parties without their attorneys being

Incredibly, Mr. Grill stated that "**The RFP was issued on Wednesday [June 24th]."** *Id.* Apparently, because Defendants did not issue the RFP **for over five weeks** after telling this Court it was nearly ready, Mr. Grill and his clients have come to the conclusion that their own actions make it impracticable to implement a RAVBM system in time for August.[11] This directly contradicts Mr. Grill's statement on the record that the State had finally issued a RFP, and Mr. Brater's sworn statement that he had previously met with vendors.

**D. Online Absentee Ballot Request System.**

Even while dragging their feet on compliance with the Consent Decree, Defendants found time to develop and roll out a new system to allow Michigan voters to apply for an absentee ballot completely online. Using this system, non-disabled voters can complete an absentee ballot application online, which is automatically forwarded to the appropriate local or state official. ECF # 32-1, Letter to Erik Grill, pg. 1. Unfortunately, they did not find the time to make this system accessible for individuals with disabilities or to allow voters with disabilities to request an accessible absentee ballot through the new system. Instead, these individuals must use a separate manual application process and face

---

present. Exhibit 5, Email Exchange. Mr. Grill did not take this concern seriously, telling Mr. Turkish that no lawyers were allowed, and if the Plaintiffs did not like that they need not attend.
[11] Defendants conveniently decided they do not have sufficient time to implement a RAVBM system on the same day they issued an RFP.

the additional burden of having to find the location of their local clerk and mail or email the absentee ballot application directly to the clerk. This additional burden on individuals with disabilities is yet another violation of the Consent Decree.

Defendants have no excuse for introducing a new online ballot request program, without offering an equal opportunity for disabled individuals to participate. This violates the Consent Decree, and constitutes an additional violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*.

### E. Press Release.

Not until June 26, 2020, five weeks after the Consent Decree deadline, did Defendants post a brief press release to their website stating that accessible absent voter applications are now available.[12] Obviously, this release was not made within ten days of the May 19, 2020 Consent Decree, and the Decree itself or a summary thereof appears to be totally absent from Defendants' website.

### <u>ARGUMENT</u>

### I.   LEGAL STANDARD.

Parties to a consent decree "have a duty to take all reasonable steps within their power to comply with the court's order." <u>John B. v. Menke</u>, 176 F. Supp.2d

---

[12] https://www.michigan.gov/sos/0,4670,7-127--533105--,00.html (last visited June 27, 2020

786, 806 (M.D. Tenn. 2001); *quoting* Glover v. Johnson, 934 F.2d 703, 708 (6th Cir. 1991) (internal quotation marks omitted). A consent decree is a "settlement agreement subject to continued judicial policing." Vanguards of Cleveland v. City of Cleveland, 23 F.3d 1013, 1017 (6th Cir. 1994); *quoting* Williams v. Vukovich, 720 F.2d 909, 920 (6th Cir. 1983) (internal quotation marks omitted).

The nature of a consent decree "compels the approving court to: (1) retain jurisdiction over the decree during the term of its existence, (2) protect the integrity of the decree with its contempt powers, and (3) modify the decree if changed circumstances subvert its intended purpose." Vanguards of Cleveland, 23 F.3d at 1018. The "courts have inherent power to enforce compliance with their lawful orders through civil contempt." Spallone v. U.S., 493 U.S. 265, 276 (1990). "When a district court's order is necessary to remedy past discrimination, the court has an additional basis for the exercise of broad equitable powers." Id.; *citing* Swann v. Charlotte-Mecklenburg Bd. of Ed., 402 U.S. 124, 161 (1971). "Both imprisonment and fines, when coercive or conditional, are legitimate civil contempt sanctions." U.S. v. State of Tenn., 925 F.Supp. 1292, 1301 (W.D. Tenn. 1995); *citing* Shillitani v. United States, 384 U.S. 364, 370 (1966); United State v. Bayshore Assoc, Inc., 934 F.2d 1391, 1400 (6th Cir. 1991).[13]

---

[13] The Consent Decree explicitly incorporates the requirements of the ADA. Where a Consent Decree references federal law, the court is bound to look to the law that

## II.    DEFENDANTS ARE IN CONTEMPT BECAUSE THEY DID NOT ACT IN GOOD FAITH TO IMPLEMENT A RAVBM SYSTEM FOR THE AUGUST ELECTION.

The Consent Decree unambiguously requires Defendants to implement a

RAVBM system for the August 2020 election. ECF # 31, pg. 7. This requirement

is not optional or alternative, it is mandatory. Yet the RFP, which Defendants'

counsel previously represented was "imminent," was not issued until June 24,

2020.[14] *See supra.* When Mr. Grill made this representation he either did so out of

ignorance or an intentional effort to mislead the Court and Plaintiffs. Nevertheless,

Defendants never took steps to comply with this vital requirement of the Consent

---

serves as the foundation for the four corners of the consent decree. John B., 176 F. Supp. 2d at 800; s*ee also* Frew v. Gilbert*,* 109 F.Supp.2d 579 (E.D. Tex. 2000) (noting that a court may stray from the four corners of a consent decree "to the extent that [Medicaid Act] requirements are clearly imported by the language of the decree."). Under the ADA, in providing aids, benefits, or services, public entities may not "[a]fford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others," nor may public entities provide qualified individuals with disabilities "an aid, benefit, or service that is not as effective in affording equal opportunity" to gain the same result or benefit as provided to others. 28 C.F.R. § 35.130(b)(1)(ii)-(iii). Furthermore, such public entities "shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities … an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." 28 C.F.R. § 35.160(b)(1).

[14] Defendants issued the RFP, the first ministerial step in the process, over five weeks after the entry of the Consent Decree, over five weeks after deciding to mail all voters an absentee ballot application for the August election, and most critically, the day before they began distributing absentee ballots for August to non-disabled voters. Furthermore, the State's procurement website does not currently list the RFP as active, leaving open the question of whether Defendants have issued it at all.

Decree and Mr. Brater recently confirmed that Defendants have no intention of implementing a RAVBM system in time for August.

The only exception under the Consent Decree is "[i]f unforeseen circumstances beyond the state's control make it impracticable to acquire a RAVBM in time for the August 2020 Election..." ECF # 31, pg. 6 (emphasis added). Defendants' failure to take even the very first ministerial step of issuing an RFP prior to June 24, 2020 was not a circumstance beyond the state's control. *Dragging one's feet* is not an unforeseeable circumstance leading to "impracticability," rather it is deliberate sabotage.

Additionally, even if the timely issuance of the RFP were impracticable, the Consent Decree required Defendants to inform Plaintiffs "immediately..." *Id.* at pg. 6. Instead, Mr. Brater announced in his June 26, 2020 *ex parte* communication that the State would not be implementing a RAVBM for the August election. Not only did Defendants never inform Plaintiffs of unforeseeable or unavoidable delays in the RFP process, but Mr. Grill and Ms. Meingast waited several days to inform Plaintiffs' counsel that an RFP had even been issued, and only in response to an inquiry from Plaintiffs' counsel. Mr. Grill has confirmed that both he and Ms. Meingast had knowledge of the non-compliance, but were too busy with other cases to notify Plaintiffs. Ex. 2. This is an additional, unequivocal, and unacceptable violation of the Consent Decree. To date, Plaintiffs have been

provided no explanation of why timely issuance of the RFP could not be accomplished, as specifically required by the Consent Decree.

A party seeking to discharge its obligations under a consent decree based on impracticability must show an unforeseeable event preventing it from performing its obligations—"beyond the party's control." Roth Steel Products v. Sharon Steel Corp., 705 F.2d 134, 149-50 (6th Cir. 1983). Defendants' hands are unclean. It is clear from their statements and conduct that Defendants did not act in good faith in negotiating or implementing the Consent Decree. Prior to entering into the Consent Decree, Defendants represented that work was well underway with vendors and an RFP would issue immediately. It is now unequivocally clear that those statements were misrepresentations, and Defendants never intended to comply with the Consent Decree. Perhaps Defendants plan to argue that the last-minute ad hoc expansion of the State's UOCAVA system, as implemented in May, is equal to a professional RAVBM.  However, Defendants' counsel has already foreclosed that argument, and Plaintiffs agree.  Mr. Grill informed the Court on May 14 that:

> What we were able to do for the May election itself was a very short term, very specific situation where we basically took the UOCAVA overseas military ballots and the bureau of elections individually modified each ballot requested by a voter and sent that voter the ballot to be marked on. That worked okay for a May election with limited jurisdictions and only a couple school board issues. We do not believe that that type of situation represents any type of viable fix for the primary or November election. Ex. 4, Transcript of May 14, 2020 hearing at p. 21.

### III.   DEFENDANTS ARE IN CONTEMPT BY FAILING TO OFFER ONLINE ABSENTEE VOTING APPLICATIONS IN AN EQUAL MANNER.

The Consent Decree and the ADA require Defendants to ensure that (1) individuals with disabilities are not excluded from the State's voting programs, and (2) absentee ballots and applications are available to the disabled at the same time they are available to non-disabled voters. ECF # 31 pg. 4-5. Defendants' new program allowing inaccessible online absentee ballot applications to be submitted completely online violates both these provisions, because it excludes people with disabilities. ECF # 32. As discussed above, non-disabled voters are now able to apply for an absentee ballot completely online, while individuals with disabilities requiring an accessible absentee ballot face the additional burden of locating and returning their application to their local clerk.

Defendants should not have launched this program until it was accessible for individuals with disabilities. 28 C.F.R. § 35.130(b)(1)(ii)-(iii). This disparate treatment of people with disabilities poses devastating consequences, as illustrated by a recent WDIV Detroit story stating that Michigan Supreme Court Justice Richard Bernstein, who is blind, was turned away from his local clerk's office when he sought assistance applying for an absentee ballot.[15] Justice Bernstein did

---

[15] https://www.clickondetroit.com/news/local/2020/06/26/blind-michigan-supreme-court-justice-is-turned-away-by-clerks-office-when-trying-to-get-absentee-ballot/ (last visited June 27, 2020)

not blame the office workers, but cited an apparent lack of training or communication from the State on how to issue and assist with accessible absentee ballots. This has put the Honorable Justice in an impossible situation. He is unable to apply for an absentee ballot online because the system is unusable by blind voters and does not result in an accessible ballot, and he is unable to apply for or complete an absentee ballot in-person, because local clerks have not been trained to provide these required accommodations, and while many offices remain closed to the public during COVID-19.

Conversely, non-disabled individuals are able to apply for a ballot totally online, and upon information and belief, such individuals have already received their absentee ballots for the August 2020 election. In this dynamic, we have non-disabled individuals already receiving absentee ballots, and blind individuals still unable to even submit a request. This is an ongoing threat to the integrity of our voting systems and the rights of voters with disabilities.

Defendants' contemptuous conduct is inexcusable. In the midst of litigation affirming that Defendants have failed to offer absentee voting in an equal manner, they have introduced a new online program that is inaccessible to people with disabilities and that will not produce an accessible ballot, all while refusing to assist voters with disabilities to complete ballots in person. Defendants are

16

violating both the Decree and the ADA requirement that government services must be equally available and accessible to persons with disabilities.

## IV.   DEFENDANTS ARE IN CONTEMPT BY FAILING TO TIMELY ISSUE A PRESS RELEASE AND POST THE CONSENT DECREE.

As of the time of filing this motion, despite the Consent Decree's requirement that they issue a press release and summary of the Consent Decree within 10 days, Defendants have still not even attempted to comply with the public notice requirements of the Consent Decree. Instead, Defendants posted a press release nearly 30 days after the deadline that simply stated that blind individuals may now request accessible absentee ballots—albeit using a program that, itself, violates the Decree.[16] The Consent Decree and summary thereof is conspicuously absent from the website. No press release has been issued informing the public of the Decree, or of the availability of accessible absentee ballots. This failure to notify the public of the relief required by the Decree has undermined its purpose and threatens to once again disenfranchise the blind community.

Defendants could not be bothered to comply with even this most basic requirement. They have demonstrated contempt, not only for this Court and its Order, but for Michigan's voters with disabilities. Just weeks after acknowledging their absentee ballot program excluded blind voters, Defendants introduced a new

---

[16] https://www.michigan.gov/sos/0,4670,7-127--533105--,00.html (last visited June 27, 2020)

system, with no viable option for the blind and others with disabilities. Clearly, Defendants are in need of additional motivation and oversight if the purpose of the Consent Decree—ensuring voting access for the blind—is to be fulfilled.

## **CONCLUSION**

For all these reasons, Plaintiffs ask this Honorable Court to hold Defendants Jonathan Brater and Jocelyn Benson, as well as their Counsel, Erik Grill and Heather Meingast, in contempt. Defendants did not act in good faith in entering into the Consent Decree, and they are in material breach of its express terms.

Defendants have failed to take steps as basic as timely issuing an RFP and posting the Consent Decree to their website. Their failure to implement a RAVBM system for the August 2020 election was of their own doing—not due to unforeseeable circumstances beyond their control. This Court has broad authority to order an appropriate remedy, including ordering the individual Defendants to appear and show cause for their failure to fulfill the requirements of the Decree.

For Mr. Grill's part, he has made material misrepresentations to this Court and attempted to facilitate an *ex parte* meeting between the parties outside the presence of counsel—conduct that is contrary to his ethical duties, and that threatens the integrity of the Consent Decree as well as the voting rights of the blind. Mr. Grill and Ms. Meingast also failed to notify Plaintiffs, as required by the Consent Decree, that the State would not be pursuing a RAVBM option for August

because they were too busy with other matters, depriving Plaintiffs of valuable time to remedy Defendants' non-compliance prior to August.

Defendants have not made a good faith effort to comply with the Consent Decree, and in fact, they demonstrated bad faith during the negotiation process. Accordingly, Plaintiffs respectfully ask this Honorable Court issue an order directing the following relief:

- Order expedited briefing on the instant motion so that a judicial remedy may be available in time for the August election;

- Order Defendants Brater and Benson to appear personally to show cause for their failure to comply with the Consent Decree;

- Order the parties to engage in discovery to learn the full extent of contempt;

- Schedule oral arguments and an evidentiary hearing on the instant motion;

- Order an award of damages, fines, and reasonable attorney's fees to the named Plaintiffs for having to bring this enforcement motion;

- Order Defendants to immediately comply with the requirement that they obtain and implement a RAVBM system in time for the August Election (either by waiving or expediting the RFP process);

- Order the appointment of a third-party monitor, to be selected by the Court, and paid for by Defendants, to ensure continued day-to-day to compliance by Defendants through the expiration of the consent decree;

- Order Defendants to issue a press release informing the electorate of their deliberate violations of the Consent Decree and their plan for remediation—in order to prevent further disenfranchisement of the blind community; and

- Order any and all other relief necessary to compel compliance with the Consent Decree and to prevent the disenfranchisement of Michigan's voters with disabilities in upcoming elections.

Respectfully submitted,

/s/ Eve Hill
Eve Hill (MD Federal Bar# 19938)
BROWN, GOLDSTEIN & LEVY LLP
120 E. Baltimore St., Ste. 1700
Baltimore, MD 21202
Phone: 410-962-1030
Fax: 410-385-0869
ehill@browngold.com

*Counsel for Plaintiff The*
*National Federation of the*
*Blind of Michigan*

/s/ Jason M. Turkish
Jason M. Turkish (P76310)
Ryan T. Kaiser (P79491)
Melissa M. Nyman (CA Bar # 293207)
NYMAN TURKISH PC
20750 Civic Center Dr., Ste. 290
Southfield, MI 48076
Phone: 248-284-2480
Fax: 248-262-5024
Jason.Turkish@NymanTurkish.com
Ryan.Kaiser@NymanTurkish.com
Melissa.Nyman@NymanTurkish.com

David Mittleman (P37490)
GREWAL LAW, PLLC
2290 Science Parkway
Okemos, MI 48864
Phone: 517-393-3000
Fax: 517-393-3003
dmittleman@4grewal.com

Dated: June 29, 2020

*Counsel for Plaintiffs Powell and Wurtzel*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 29, 2020 I filed the foregoing document and attached exhibits using the Court's CM/ECF filing system, which will automatically generate notice of such filing to all counsel of record.

/s/ Jason M. Turkish
Jason M. Turkish (P76310)